**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE**

*ELECTRONICALLY FILED*

**CRIMINAL NO. 05-15-KKC**

**UNITED STATES OF AMERICA**                                          **PLAINTIFF**

**V.**                          **UNITED STATES' TRIAL BRIEF**

**BOBBY GIBSON, JR.**                                                  **DEFENDANT**

*         *         *         *         *

Trial is scheduled in this matter for November 14, 2005.  The United States submits this trial brief for the Court's assistance.

## I.  THE INDICTMENT

On July 25, 2005, a federal grand jury returned a two-count indictment against defendant Bobby Gibson, Jr.  Count One charges the defendant with a felony violation of 42 U.S.C. § 3631, the criminal provision of the Fair Housing Act, which prohibits the willful use or threat of force to injure, intimidate or interfere with individuals because of their race or color and because they are occupying a dwelling.  Count One charges that on or about February 12, 2005, Gibson firebombed the home of three African American men, using as his weapon a jar containing ignited accelerant.

Count Two charges the defendant with using fire during the course of the commission of a felony, in violation of 18 U.S.C. 844(h).

## II. **SUMMARY OF ANTICIPATED EVIDENCE**

The February 12, 2005, arson started outside the main entrance to a brick house rented by victims Quinton Collins, Curtis Ellison and Michael Sheppard. All three of the victims are African-American students who are enrolled at nearby Pikeville College. Victims Collins and Sheppard were inside the house when the fire started.

The victims lived approximately ten houses away from the defendant, in an exclusively white community comprised of trailers and small houses. Several witnesses confirm that the defendant harbors racial animus towards African-Americans. Shortly after the fire, the defendant admitted to several friends that he committed the crime. Further, the defendant revealed his intentions to start the fire to at least one witness prior to the arson.

## III. **SUMMARY OF THE LAW**

A. <u>Count One – 42 U.S.C. § 3631 (Interference with Housing</u>)

1. <u>The Statute</u>

Count One charges a felony violation of 42 U.S.C. § 3631. Section 3631, which is part of the Fair Housing Act (FHA), makes it a crime to use force or the threat of force to injure, intimidate or interfere with a person because of race or color and because of that person's occupancy of a dwelling. "Experience teaches that racial violence has a broadly inhibiting effect . . . . Such violence must, therefore, be broadly prohibited if the enjoyment of those rights is to be secured." S. Rep. No. 721, <u>reprinted in</u> 1968 U.S.C.C.A.N. 1837, 1842 (citing <u>United States v. Darby</u>, 312 U.S. 100, 118-19, 312 U.S.

657 (1941), <u>United States v. Wrightwood Dairy</u>, 315 U.S. 110, 119 (1942), and <u>Heart of Atlanta Motel, Inc. v. United States</u>, 379 U.S. 241, 258 (1964)).  The statute provides in pertinent part:

> Whoever . . . by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with (a) any person because of his race. . . and because he is or has been . . . occupying any dwelling . . . and if bodily injury results [shall be guilty of an offense against the United States].

Section 3631 provides for punishment of up to one year imprisonment, but if bodily injury results or the acts include "the use, attempted use, or threatened use of a dangerous weapon," violations are punishable by imprisonment for up to ten years.  Because Count One alleges the use, attempted use, or threatened use of a dangerous weapon, that count charges a felony offense.  Section 844(h) is also a felony offense.

    2.  <u>The Elements</u>

In order to establish a violation of § 3631(a), the United States must prove the following four essential elements:

    (a)     the defendant used or threatened force;

    (b)     the defendant injured, intimidated or interfered with, or attempted to injure, intimidate or interfere with, the victims;

    (c)     the defendant acted because of the victims' race or color and because the victims were occupying a dwelling; and

    (d)     the defendant acted willfully.

<u>United States v. Wood</u>, 780 F.2d 955, 961 (11th Cir.), <u>cert</u>. <u>denied</u>, 476 U.S. 1184 (1986).

In this case, the government has alleged and therefore must also prove:

(e)     the defendant's conduct involved the use, or attempted use, of fire.

   a.     Use of Force or Threat of Force

The plain language of Section 3631 prohibits interference by means of both the actual use of force and the threatened use of force. In common use, "force" means "power, violence, compulsion, or restraint exerted upon or against a person or thing." Webster's Third New International Dictionary; United States v. McDermott, 29 F.3d 404, 409 (8th Cir. 1994)(similar definition of force used); United States v. Bamberger, 452 F.2d 696, 699 (2d Cir. 1971)(discussing and relying on Webster's definition of force); United States v. Marcello, 423 F.2d 993, 1011 (5th Cir. 1970)(same).

"Threat of force" means precisely what the term implies - namely, a threat, either through words or gestures, to inflict some harm or to use force against a person or property. Whether a defendant's words and actions constitute a threat is a question for the trier of fact. See United States v. Maisonet, 484 F.2d 1356, 1358 (4th Cir. 1973), cert. denied, 415 U.S. 933 (1974). The test for determining whether a defendant threatened force is whether a reasonable person in the same circumstances as the victim would consider the defendant's actions threatening. Id.; United States v.Viefhaus, 168 F.3d 392 (10th Cir. 1999); United States v. Hartbarger, 148 F.3d 777, 782-83 (7th Cir. 1998). Generally, when making that determination, the charged threat "should be considered 'in light of the entire factual context,'" and the trier of fact "may look at the surrounding events." United States v. Gilbert, 884 F.2d 454, 457 (9th Cir. 1989). See also; United States v. Orozco-Santillan, 903 F.2d 1262, 1265 (9th Cir.1990)("Alleged threats should

4

be considered in light of their entire factual context, including the surrounding events and reaction of the listeners.");  United States v. Hayward, 6 F.3d 1241, 1249-50 (7th Cir. 1993); Watts v. United States, 394 U.S. 705, 708 (1969)(whether a statement is a true threat must be evaluated in its factual context).  One of the factors to be considered within "the entire factual context" is the victims' reaction to the charged threat. United States v. Hartbarger, 148 F.3d 777, 782-83 (7th Cir .1998)(holding that victim reaction evidence is relevant under the reasonable foreseeability test); United States v. J.H.H., 22 F.3d 821, 827-28 (8th Cir.1994)(holding that victim reaction evidence is relevant under the reasonable recipient test); Gilbert, 884 F.2d at 457 (fact finder should look at surrounding events "as well as the reaction of the listeners").

The element of force is proved by the actual nature of what the defendant did. Here, the defendant's actions, placing a jar containing accelerant outside the main entrance to the victims' home and lighting it, clearly constitute the use and threatened use of force.  Also, the defendant not only caused damage to the victims' house but, more importantly, he also shattered the victims' sense of safety and security within their own home.  This display of violence was intended to be threatening and was, in fact, perceived as threatening.

b.    Intent to Injure, Intimidate or Interfere

The government must also prove that the Defendant injured, intimidated, or interfered with, or attempted to injure, intimidate, or interfere with, the victims enjoyment of their housing rights.  The words "interfere with" and "intimidate" cover a variety of

conduct intended to harm, frighten or prevent the free action of others. <u>McDermott</u>, 29 F.3d at 408-09 (approving jury instruction using same language).

The "main question" to be answered in addressing this element is "whether the defendant[] intended to intimidate the victims, not whether the victims were actually intimidated." <u>Hayward</u>, 6 F.3d at 1252. Therefore, proof that the defendant's conduct actually intimidated the victims, or drove them from their home, is unnecessary. <u>United States v. Redwine</u>, 715 F.2d 315, 322 (7th Cir. 1984)("[I]nterference or intimidation is to be inferred from violent acts or threats, and there is no need to show the subjective state of mind of the intended victim"). Nevertheless, proof that the defendant's conduct did interfere with or intimidate the victims may provide additional evidence that the defendant intended to interfere with or intimidate the victims. <u>See</u> <u>United States v. Magleby</u>, 421 F.3d 1306, 1311 (10th Cir. 2001)(jury may properly consider victims' reaction when assessing defendant's intent to violate housing rights by burning a cross); <u>United States v. Griffin</u>, 525 F.2d 710(1st Cir. 1976); <u>J.H.H.</u>, 22 F.3d at 826-27 (same); <u>Hartbarger</u>, 148 F.3d at 782-83 (same).

The second element of § 3631, the intent to injure, intimidate, or interfere with the victims, is amply demonstrated by the act itself. Although the intent to intimidate can be inferred from the offense charged and there is no need to show the subjective state of mind of the victim, evidence of interference or intimidation can also be shown by the victims' reaction. Lighting a jar containing accelerant outside the victims' house plainly demonstrates that the defendant intended to intimidate the victims. The fact that the victims felt threatened, as will be established at trial, provides further proof of the defendant's intent. Further, the defendant's intent to interfere with the housing rights of the victims is also shown by his statements to friends following the arson.

c. Defendant Acted On Account of Race or Color and Because the Victims Were Occupying a Dwelling

The government must establish that the defendant's actions were motivated by the victims' race or color and by the victims' occupancy of a dwelling. 42 U.S.C. § 3631(a). "Occupation" of one's home under § 3631 has been given a broad interpretation and includes all of the rights normally associated with living in one's home. See United States v. Gilbert, 813 F.2d at 1527-28; see, e.g., Wood, 780 F.2d 955, 963 (11th Cir. 1986). Thus, occupancy includes the range of activities that one may exercise with respect to one's home, not "mere[ly] presence within four walls." Gilbert, 813 F.2d at 1528.

The presence of other motives, such as personal dislike, anger, or revenge, does not make the conduct any less a violation of Section 3631. Johns, 615 F.2d 672, 675 (5th

Cir. 1980).  In other words, the government need not prove that race and occupancy were the sole or predominant motives for the defendant's actions.  Hartbarger, 143 F.3d at 784, n. 6 ("Even if the jury believed that defendants were retaliating against [one of the victims] because of an alleged confrontation, having more than one motive does not change the fact that they had the specific intent to use a racially charged symbol to frighten and intimidate [the victims] and to interfere with their enjoyment of their right to fair housing"); United States v. Bledsoe, 728 F.2d 1094, 1097-98 (8th Cir., 1984)(fact that defendants may have been motivated by another factor is not a defense if race is also a factor); United States v. Mitchell, 580 F.2d 789, 791 (5th Cir. 1978)(in civil enforcement action under FHA, the government need only show that race "was a consideration and played some role"); Marable v. Walker Associates, 644 F.2d 390, 395 (5th Cir. 1981)(in privately initiated civil FHA action, race need not be sole factor for defendant's decision, only one significant factor); cf. United States v. Ellis, 595 F.2d 154, 162 (3d Cir. 1979)(finding that although 18 U.S.C. § 241 violation requires specific intent to deprive victims of their rights, it does not require that such intent predominate over other motives).

The United States will prove the defendant's racial motivation through testimony that the defendant admitted starting the fire while contemporaneously using racial slurs in his references to the victims.  The government will further establish the defendant's racial motives with significant evidence of the defendant's racist beliefs, including, among other things, the defendant's frequent use of racial epithets to refer to African Americans and

his advocacy of violence against African Americans. Friends of the defendant will testify that, after the fire, the defendant openly expressed his satisfaction that there were no longer African Americans living in his neighborhood. This evidence provides additional proof that the defendant acted because of the victims' occupancy of their home. Magleby, 241 F. 3d 1306 (10th Cir. 2001)(evidence sufficient to show intent to interfere with housing rights, where defendant used racial slurs, knew that house was occupied by black man, told racist jokes, and visited racist Internet sites on evening of crime.)

        d.    <u>Willfulness</u>

The fourth element, willfulness, requires the government to establish that the defendant committed the act voluntarily and purposefully, rather than inadvertently or by mistake, and that the defendant acted with the specific intent to do something that the law forbids. <u>Screws v. United States</u>, 325 U.S. 91, 101-07 (1947); <u>Devitt and Blackmar, Federal Jury Practice and Instructions</u> §§ 17.03-.05 (4th ed. 1990). The defendant's admissions, both before and after the arson, will prove that the defendant acted "willfully."

        e.    <u>Defendant's Conduct Involved the Use of Fire</u>

Although proof of the above four elements is sufficient to establish a violation of 42 U.S.C. § 3631, the government has alleged and therefore must also prove that the defendant's actions involved the use or attempted use of fire. 42 U.S.C. § 3631(c).

B.    <u>Count Two – Use of Fire During Commission of Felony (18 U.S.C. § 844(h)(1)</u>

    1.    <u>The Statute</u>

Count Two charges the defendant with violating Section 844(h)(1) of Title 18. This section provides in pertinent part:

> Whoever uses fire or an explosive to commit any felony which may be prosecuted in a Court of the United States . . . [shall be guilty of an offense against the United States].

18 U.S.C. § 844(h)(1).

2. The Elements

The statute is "aimed at punishing those who make criminal use of fire." United States v. Riggio, 70 F.3d 336, 338-39 (5th Cir. 1995). Two essential elements which must be proved in order to establish a Section 844(h) offense are: (a) the defendant must use fire; and (b) the fire must be used to commit a felony prosecutable in a court of the United States. See 18 U.S.C. § 844(h)(1). Here, the defendant used fire, by lighting a jar containing accelerant outside of the victims' home, in order to commit the violation of interference with housing rights, Title 42 U.S.C. § 3631, a felony prosecutable in a court of the United States. Accordingly, this provision is appropriate.

a. Use of Fire

The term fire in Section 844(h) has its common sense meaning. The defendant in this case used fire outside the victims' home in order to terrorize them, and is therefore properly charged in Count Two. See United States v. Ramey, 24 F.3d 602, 610 (4th Cir. 1994)(§844(h) reaches use of fire, and is limited to use of explosives). Section 844(h) reflects the view of Congress that fire is especially dangerous because it can so easily get out of hand and cause widespread destruction and that therefore felonies effected by

means of fire should be punished more severely than felonies effected by other means. United States v. Konopka, 409 F.3d 837, 839 (7th Cir. 2005); United States v. Colvin, 353 F.3d 569, 575; United States v. Patel, 370 F.3d 108, 115 (1st Cir. 2004); United States v. Grassie, 237 F.3d 1199, 1215 (10th Cir. 2001).

      b.     Commission of Any Felony Prosecutable in a Court of the United States

The evidence in this case shows that the defendant used fire to commit the crime charged in Count One, Interference with Housing Rights, in violation of 42 U.S.C. § 3631, which is a federal felony offense. Here, the defendant lit a mason jar with accelerant in order to intimidate the African American victims in their occupation of a dwelling.

An additional charge under 18 U.S.C. § 844(h) for the use of fire is proper in an arson case. See Colvin, 353 F.3d 569 (7th Cir. 2003)(Conviction for using fire in commission of felony, arising from cross burning, did not violate double jeopardy clause); Hartbarger, 148 F.3d 777, 785 (7th Cir. 1998)(§ 844(h) applies to anyone who has been convicted of using fire or an explosive to commit a felony); United States v. Wildes, 120 F.3d 468, 471 (4th Cir. 1997)(§ 844 applies to non-arson cases; to hold otherwise would render plain language of statute duplicative); United States v. Weigand, 45 F.3d 431 (6th Cir. 1994)(convictions under 42 U.S.C. § 3631, and 18 U.S.C. § 844(h) do not constitute impermissible double jeopardy).

## IV. ANTICIPATED EVIDENTIARY ISSUES

In order to assist the parties and the Court in avoiding unnecessary delay and disruption at trial due to evidentiary issues, the government submits the following memorandum of law with respect to several issues that the prosecution anticipates might arise during trial.

A.    <u>Arson and the First Amendment Defense</u>

Threats of violence, like the one made by the defendant here, are not protected by the First Amendment.  <u>NAACP v. Claiborne Hardware</u>, 458 U.S. 886, 916 (1982); <u>Hayward</u>, 6 F.3d at 1249-52.  The government is responsible for criminalizing threats in order to protect "individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur."  <u>R.A.V. v. City of St. Paul, Minnesota</u>, 112 S. Ct. 2538 (1992).   A defendant's right to free expression does not extend to actions intended to promote imminent lawlessness or to threaten or frighten the victims or interfere with the victims' peaceful occupancy of their home.   <u>See</u> <u>Stewart</u>, 65 F.3d at 929-30 (rejecting argument that defendants were being punished for a symbolic expression of their beliefs and stating that defendants were convicted of engaging in threatening, intimidating activity and with interfering with the victims' housing rights); <u>McDermott</u>, 29 F.3d 404, 406 (citing <u>United States v. Lee</u>, 6 F.3d 1297 (8th Cir. 1993)(en banc))(cross-burning is not protected symbolic speech if its purpose is to incite imminent lawlessness or to threaten the victims or to cause the victims to reasonably fear the imminent use of force or violence); <u>Hayward</u>, 6 F.3d 1241, 1250 (7th Cir. 1993)("No doubt, the defendants wanted to express their dislike, even hatred, of

12

blacks through the cross burnings. But the act of cross burning also promotes fear, intimidation, and psychological injury. Therein lies the reason cross burning, as done in this case, lacks First Amendment protection"); see also United States v. Rahman, 189 F.3d 88, 115 (2nd Cir. 1999)(a line exists between expressions of belief, which are protected by the First Amendment, and threatened or actual uses of force, which are not), cert. denied, 120 S. Ct. 439, 830, 831 (1999 and 2000).

B.      Voluntary Intoxication Defense

The defendant may choose to assert a voluntary intoxication defense to the charges alleged in the indictment.  However, evidence of intoxication or drunkenness alone is not a legal excuse for the commission of a crime.  See Molina-Uribe, 853 F.2d at 1206 (fact that a defendant has used alcohol or other substance before committing a crime does not, by itself, constitute defense).  It is well settled that an accused is not entitled to a jury instruction on voluntary intoxication where the theory of defense lacks evidentiary support.  Molina-Uribe, 852 F.2d at 1205-06 (internal quotations and citations omitted); see also Jackson, 213 F.3d 1269, 1290-91 (defendant was only entitled to the diminished capacity/voluntary intoxication instruction if the law supported his theory and the facts in evidence were sufficient to find in his favor).  In Molina-Uribe, the Fifth Circuit held that a defendant was not entitled to a voluntary intoxication instruction.  Although the defendant had consumed alcohol and marijuana, the evidence showed that he could stand alone, did not have slurred speech or blurred eyes, and did not smell of alcohol or marijuana.

Voluntary intoxication is only available as a defense to a specific intent crime. United States v. Molina-Uribe, 853 F.2d 1193, 1205 (5th Cir. 1988)("[i]t is well settled that voluntary intoxication is no defense to a general intent crime"); see also United States v. Jackson, 213 F.3d 1269, 1290 (10th Cir. 2000)(defense available "where the evidence indicates the defendant was so intoxicated [he] was incapable of forming the *mens rea* required by a specific intent crime").  It is a question of fact whether a defendant was sufficiently drunk to preclude his formation of the necessary specific intent to be legally responsible for a particular crime.  Id. at 1205 ("evidence of intoxication is proper for consideration by the jury to determine whether a sufficient degree of intoxication existed to negate [specific] intent"). Although Count One requires the government to prove that the defendant had the specific intent to interfere with a federally protected right, the defendant was not sufficiently intoxicated to preclude his ability to formulate the intent necessary to be guilty of each offense.  Here, the defendant's premeditation will be shown through evidence that the defendant walked unassisted to the victims' home, placed a jar containing accelerant outside the front door, lit a match, and ignited a wick inside of the jar.  Further, the defendant bragged to numerous friends, which reveals that he had a clear recollection of events.

Common experience teaches us that many crimes are committed by people who had previously consumed alcohol.  Often, and perhaps even in this case, consuming alcohol is a necessary condition precedent which gives the wrongdoer the "courage" to commit the crime.  However, being emboldened by alcohol is not tantamount to being

14

unable to formulate the requisite criminal intent for a particular criminal offense. The evidence in this case will show that on February 12, 2005, Bobby Gibson placed and lit a jar containing accelerant outside the victims' home. The fact that the defendant may have consumed alcohol during or prior to the commission of the offense neither mitigates nor excuses his crime.

C.      Admissibility of Character Evidence

The government anticipates that the defendant might offer character evidence at trial, attempting to introduce evidence of the bad character of one or more government witnesses and/or of the good character of the defendant. The admissibility of character evidence is governed by Rules 401 (Relevant Evidence), 403 (Exclusion of Relevant Evidence on Grounds of Prejudice), 404 (Character Evidence Not Admissible to Prove Conduct), 405 (Method of Proving Character Evidence) and 608 (Evidence of Character and Conduct of Witness). Character evidence, like all other forms of evidence, must be relevant in order to be admissible. Fed. R. Evid. 401. Moreover, this type of evidence, like all other evidence, is subject to the balancing test of Rule 403, which requires exclusion if the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

1.      Evidence of a Prosecution Witness' Bad Character

The credibility of any testifying witness may be attacked or supported by

appropriate character evidence. Fed. R. Evid. 608(a). However, that evidence may only refer to the witness' character for truthfulness or untruthfulness, and evidence of the witness' truthfulness is only admissible after the witness' character has been attacked. Id. Moreover, character evidence may only be in the form of opinion or reputation testimony. Fed. R. Evid. 405(a). Before a character witness can offer testimony about another witness' reputation, the character witness must first show "such acquaintance with the defendant, the community in which he has lived, and the circles in which he has moved as to speak with authority of the terms in which generally he is regarded." Michelson v. United States, 335 U.S. 469, 478 (1948).

Upon cross-examination of a character witness, opposing counsel may inquire about specific instances of conduct that are inconsistent with the character trait to which the witness has testified. Fed. R. Evid. 405(a); 608(b). However, the specific instances may not be proven through extrinsic evidence, meaning that the attorneys must accept the witness' answers without offering additional evidence. See Fed. R. Evid. 608(b).

Thus, if a defendant offers evidence of a prosecution witness' bad character for truthfulness, the defendant may ask only about the witness' *reputation* for untruthfulness or the character witness' *opinion* of the witness' truthfulness. The defendant may not ask questions about specific instances of untruthfulness. On cross-examination, however, the government may inquire about specific instances of truthful conduct.

2. Evidence of a Defendant's Good Character

Evidence of a defendant's character is generally not admissible, except that the

16

defendant may introduce evidence of a "pertinent trait of character" and the government may introduce evidence to rebut the same. Fed. R. Evid. 404(a)(1). "That is, the defendant may present evidence of pertinent good character traits to suggest to the jury that a person of his good character would not commit the offense with which he is charged." Cissel, Federal Criminal Trials, § 15-4(a)(citing Michelson, 335 U.S. 469). This type of testimony must relate to a particular issue in the case, and the witness may testify only about the character trait relevant to that issue. For example, in a fraud case, a character witness may testify about the defendant's reputation for honesty, but in a controlled substance case, the same testimony would be excluded. See United States v. Jackson, 588 F.2d 1046 (5th Cir. 1979). As with all character evidence, this testimony must be in the form of opinion or reputation testimony only. Fed. R. Evid. 405(a).

A defendant who offers evidence of his good character may not offer examples of specific instances of good conduct, Fed. R. Evid. 405(a), 608(b), but the government may cross-examine the witnesses about specific instances of bad conduct.  Id.  This cross-examination may include inquiry about a defendant's past crimes or wrongful acts, and even the defendant's arrests.  Cissel at § 15-4(a)(2)(citing Michelson, 335 U.S. at 482-87; United States v. Evans, 569 F.2d 209 (4th Cir. 1978)).

Thus, if a defendant offers evidence of his character trait for law abiding behavior, he may not offer specific instances of conduct (for example, evidence of good deeds he did while in the Boy Scouts).[1]  On cross-examination, however, the government may question that witness about specific acts of the defendant's non-law-abiding behavior (for example, evidence of underage drinking or driving without a license).  The government may ask the witness about the facts of the case for which the defendant is on trial, United States v. Morgan, 554 F.2d 31, 33 (2nd Cir. 1977), but may not ask the witness to assume the defendant's guilt in the case, United States v. Polsinelli, 649 F.2d 793, 795 (10th Cir. 1981).  If the government inquires about specific acts of bad conduct, it may not then prove up the specific acts through extrinsic evidence.  E.g., United States v. Herman, 589 F.2d 1191 (3rd Cir. 1978).  Finally, the government also may call its own character witnesses to offer contrary reputation and opinion testimony about the defendant's bad

---

[1] If character is an essential element of a crime or a defense, proof may also be made by specific instances of the person's conduct.  Fed. R. Evid. 405(b).  In this case, however, character is not an essential element and such proof therefore is not permitted.

character.  Fed. R. Evid. 404(a)(1).  Although the government may not initially introduce the issue of a defendant's bad trait of character, <u>See</u> Fed. R. Evid. 404(a)(1), the government may offer such evidence to rebut good-character evidence offered by the defense.  <u>Id.</u>

Even where character evidence is admissible and is offered in the proper form, the Court, in its discretion, may limit the number of witnesses.  <u>Michelson</u>, 335 U.S. at 480.

C.    <u>Admissibility of Out-of-Court Statements</u>

At trial, the government will introduce evidence that the defendant made numerous admissions  about the February 12, 2005 fire.  Witnesses will describe the actions taken and the racial epithets that were uttered.  All of these out-of-court statements made by the defendant are admissible for the following reasons.

The majority of these statements are not hearsay under Rule 801.  First, prior admissions made by a defendant are not hearsay under Fed. R. Evid. 801(d)(2)(A) (admission by party-opponent);  <u>United States v. Cohen</u>, 946 F.2d 430, 435 (6th Cir.1991).  Thus statements by the defendant regarding the February 12, 2005 arson are admissible non-hearsay.  Some of these statements are also admissible as they are statements of then-existing intent under Rule 803(3).  <u>See</u> <u>Ross v. St. Augustine's Coll.</u>, 103 F.3d 338, 342 (4th Cir. 1996); <u>Phoenix Mut. Life Ins. Co. v. Adams</u>, 30 F.3d 554, 566 (4th Cir. 1994)(statement of intent admissible as evidence to prove subsequent conduct in conformity with statement); <u>United States v. Jenkins</u>, 579 F.2d 840, 842-843 (4th Cir. 1978)(admitting statement under Rule 803(3) to show declarant's intent and to

promote inference that she acted on her intent)(discussing <u>Mutual Life Ins. Co. v. Hillmon</u>, 145 U.S. 285 (1892)).

Finally, many of the statements that will be offered are not hearsay because they are racial taunts, curses and insults that are not introduced for their truth.  <u>See</u> Rule 801(c); <u>Pounds v. Board of Trustees</u>, 2000 WL 655936 at * 6 (4th Cir. 2000)(citing <u>Talley v. Bravo Pitino Rest.</u>, 61 F.3d 1241, 1249 (6th Cir. 1995)(deciding that racist comments were not hearsay because they were offered to demonstrate racial attitudes and were not offered to prove the truth of the comments); <u>CalMat Co. v. Dep't of Labor</u>, 364 F.3d 1117, 1124 (9th Cir. 2004)(holding that racially offensive statement was not hearsay because it was not offered for its truth); <u>Booker v. Budget Rent-a-Car- Sys.</u>, 17 F. Supp. 2d 735, 744 & n.3 (M.D. Tenn. 1998)("[R]acial epithets allegedly uttered . . . are not hearsay statements which are inadmissible in Court.  These statements would not be introduced to prove the truth [of the] matter asserted therein – <i>i.e.</i>, that African-Americans are 'niggers'... but only as evidence of the racial attitude of the declarant.  As such, they are not considered hearsay under Federal Rule of Evidence 801(c)."; <u>Fincher v. County of Westchester</u>, 979 F. Supp. 989, 1005 (S.D.N.Y. 1997)(same); <u>Brown v. City of Aurora</u>, 942 F. Supp. 375, 380 n.7 (N.D. Ill. 1996).

# V. CONCLUSION

The United States submits this Trial Brief for the assistance of the Court in the above-captioned case.

Respectfully submitted,

GREGORY F. VAN TATENHOVE
UNITED STATES ATTORNEY


s/ Patrick H. Molloy
Patrick H. Molloy
Assistant United States Attorney
110 W. Vine Street, Suite 400
Lexington, KY 40507-1671
(859) 233-2661 ext. 125
Pat.Molloy@usdoj.gov


Prepared by: Kristen Clarke-Avery, Trial Attorney
Criminal Section, Civil Rights Division
U.S. Department of Justice
601 D Street, NW - 5th Floor
Washington, DC 20004
(202) 514-1471

## CERTIFICATE OF SERVICE

On November 2, 2005, I electronically filed this document through the CM/ECF system, and I mailed this document and the notice of electronic filing to:

Clyde Fitzpatrick Johnson
**Kirk Law Firm**
193 East Court Street
Prestonsburg, KY 41653
*Counsel for Bobby Gibson*


s/ Patrick H. Molloy
Assistant United States Attorney